# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:20-cr-00197-RFB-BRW |
| Plaintiff, | ORDER |
| v. | |
| JUSTIN LEWIS, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Mr. Justin Lewis' Motion to Suppress [ECF No. 15]. The Court held an evidentiary hearing on this Motion on February 25, 2021. [ECF No. 34] Lewis has also now expired his state sentence as of February 2022 and has been realized from custody on the instant federal case. For the reasons stated below, the Court grants the Motion to Suppress.

## II. FACTUAL FINDINGS

The Court makes the following factual findings based upon consideration of all of the evidence submitted at the evidentiary hearing in this case.

On March 27, 2020, Officer Justin Chronister of the Henderson Police Department observed a vehicle driving approximately 55 miles per hour in a 45 miles per hour zone. He also observed that this vehicle had changed lanes without properly signaling prior to changing lanes. Both of these observations constitute violations of Nevada traffic laws. Chronister deployed the emergency lights on his patrol vehicle and followed the vehicle into the parking lot of a nearby apartment complex.

At approximately 1:00 a.m., after Chronister had pulled in behind the vehicle blocking it in, he stepped out of his vehicle and approached the open window on the driver side of the vehicle. Chronister directed both occupants, Mr. Justin Lewis ("Lewis"), the defendant, and his wife Mrs.

Leighett Lewis ("Leighett") to provide their drivers' licenses, the car's registration and the insurance for the car. As the Lewis's were gathering these documents, Chronister asked if there were any weapons in the vehicle. Lewis told him there were no weapons in the vehicle. Lewis then handed Chronister both licenses, the registration and proof of insurance. Chronister, after reviewing the registration and proof of insurance, handed those respective documents back to Lewis, noting that they "look[ed] good." Chronister then took the Lewis' licenses back to his vehicle to do searches on these licenses. He conducted various searches of law enforcement databases of both. None of these searches indicated that either had an active warrant. There was only a note to contact two local detectives if an officer had contact with Lewis. This note did not reference an active warrant or any information that would provide a basis for detaining or arresting Lewis. The search of law enforcement databases did reveal that Lewis had three prior state felony convictions for a.) possession of stolen property (2008), and b.) battery-domestic violence (2010), and c.) possession of a stolen vehicle (2018), The search also indicated that Lewis had several arrests for various offenses, including one for possession of a weapon. The search also indicated that Lewis was on parole for his most recent conviction.

While he was conducting the search of these licenses, Chronister requested a backup officer. At the time that he requested backup, Chronister did not have any information suggesting that either Lewis represented a threat to him or were armed or dangerous. Both had been completely cooperative and had not engaged in suspicious conduct or behavior.

After the backup officer, Officer Filsinger, arrives, Chronister tells him that Lewis is a three-time felon who is "on paper" [on parole or probation] for a stolen vehicle and that there is a note in the electronic database to contact two detectives. He indicated that Lewis had several tattoos, but the Court does not find that he could identify them. Chronister confirmed that the Lewis' had been cooperative. He did not tell Filsinger that either of these individuals was behaving suspiciously or that they or anything in the vehicle represented a safety risk. He did not tell Filsinger that he suspected Lewis of being in violation of any parole conditions. He tells Filsinger that he is going to get them out of the vehicle and "make some contacts." Despite having no reason to suspect that either posed a risk to his safety or that of Filsinger, Chronister orders the two out

of the vehicle about ten minutes after they had been stopped. Chronister again asked Lewis if there were any weapons in the vehicle and Lewis said there were not. At the time that he ordered them out of the vehicle, Chronister knew that neither had any active warrants and he could have issued a traffic citation and let them leave. He chose instead to order them out of the vehicle for purpose of pursuing further questions unrelated to the traffic stop.

After being ordered to exit the vehicle, both Lewis' exit the vehicle and walk to the front of Chronister's patrol vehicle. Chronister then asked Lewis a third time if he had any weapons or anything "sharp" on him. Lewis said no. Chronister then asked Lewis if he would "mind" if Chronister searched him. Chronister then searched Lewis, including his pockets, and found no weapons on him. Filsinger did the same for Leghett and found nothing. They found no contraband on either and no basis to arrest or detain them. He then returned to his vehicle.

Upon returning to his vehicle, Chronister called the two detectives who had left an electronic note in the file of Lewis. He did not reach them and he did not leave a voicemail. He did not have any indication from the note that there was a basis to arrest or detain either one of them. Chronister then returned to the front of his vehicle where Lewis was standing. Leghett was standing on the side of the front of the patrol vehicle and Filsinger was standing behind her. Chronister then asked Lewis if Lewis was in violation of any of his parole conditions and Lewis said no. Chronister then indicated to Lewis that they were all "waiting" for a parole officer to call back. Chronister then said that before Lewis was "released" he wanted to make sure that there were no weapons in the car. He asked if it was "okay" for Chronister to search the vehicle. Lewis said "yes."

Chronister then searched the vehicle. He started on the driver's side of the vehicle. He then moved to the passenger's side of the vehicle. On the passenger's side of the vehicle, he encountered a handbag. He searched the handbag and found a gun in the bag underneath other items in the bag.

### III.  LEGAL STANDARD

The Fourth Amendment protects the right of the people to be secure in their persons against unreasonable searches and seizures by the government. U.S. Const. amend. IV. A warrantless

search is *per se* unreasonable under the Fourth Amendment, subject to only a "few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967).

Police may conduct a seizure of an individual and their vehicle based upon a traffic violation that the police witness. Rodriguez v. United States, 575 U.S. 348, 350–51 (2015). However, "[a]uthority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Id. at 354. Thus, a seizure based on a police-observed traffic violation violates the Fourth Amendment "if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." Id. at 350–51 (2015) (internal citation and quotations omitted). Police may not prolong the traffic stop with tasks or investigations unrelated to the specific traffic violation "unless there [i]s independent reasonable suspicion justifying each prolongation." United States v. Evans, 786 F.3d 779, 786 (9th Cir. 2015).

### IV. DISCUSSION

The Court finds that the police unlawfully extended the traffic stop of Lewis and his wife and the search of the car was therefore the result of an unlawful prolonged seizure.

**A. The Mission of the Traffic Stop Was Completed Prior to The Search**

The Court first finds that Officer Chronister unlawfully extended the traffic stop beyond the mission and purpose for the traffic stop. Chronister had stopped Lewis due to two traffic infractions. He explained this to Lewis after pulling Lewis over and pulling his patrol vehicle in behind Lewis. Within five minutes of pulling Lewis over, Chronister had sufficient information to be able to issue a traffic citation and let Lewis go. By this time, Chronister had confirmed that Lewis' registration and insurance were current. He had confirmed that there were no warrants for Lewis. Lewis and his wife were cooperative, and Chronister had not observed within this period (or over the course of the stop) any contraband, any weapon or a crime. The government has not established through credible evidence any reason why a traffic citation could not have been started within five minutes of the stop and completed a few minutes later.

**B. The Stop Was Extended To Conduct An Unrelated Investigation**

The Court finds that Chronister unlawfully prolonged the traffic stop by pursuing an investigation into whether or not Lewis was in violation of his parole conditions. First, the Court finds that there is nothing about the investigation into the conditions of Lewis' parole or any purported violation that was in any way related to the traffic stop in this case. As the Ninth Circuit has long established, the "purpose" of "parole" "is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed." Reese v. United States Board of Parole, 530 F.2d 231, 235 (9th Cir. 1976)(internal citations omitted). The Ninth Circuit has further explained that "[t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by *certain rules* during the balance of the sentence." Id. (emphasis added)(internal citations omitted). In the instant case, however, the government has not established by credible evidence that any of Lewis' parole 'rules' or conditions were related to traffic citations. Thus, the government cannot establish that further questioning about Lewis' parole or parole conditions was related to the "mission" of the traffic stop. Rodriguez, 575 U.S. at 350–51.

Second, the Court also rejects the government's argument that Chronister continued his questioning and detention of Lewis because he believed that Lewis was in violation of Lewis' parole conditions, including the curfew condition. The Court finds that Chronister did not believe at the time of the traffic stop that Lewis was in violation of any parole conditions. Rather, the Court finds that Chronister used Lewis' parole status as a pretext to continue his detention of Lewis. The Court finds that the government's assertion that Chronister believed that he had to detain Lewis until he could contact his parole officer is not credible or supported by the evidence from the hearing or record. Moreover, even if the police department had a policy of requiring patrol officers to detain individuals until their parole officer could be contacted, such policy, by itself, could not override or abrogate the constitutional requirement that the extension of a traffic stop must be based upon an independent basis for reasonable suspicion. Evans, 786 F.3d at 786. The Court finds that the stop was extended more than ten to fifteen minutes by Chronister's pursuit of this additional investigation before he requested consent to search from Lewis. This extension of the stop was unrelated to the mission of the traffic violation and was therefore unlawful. Id.

Third, the Court finds that Chronister requested a backup officer to assist him in anticipation of him removing the Lewis' from their car and searching them and the car. The Court does not find Chronister's testimony that he had safety concerns to be credible. Rather, the Court finds that the Lewis's were cooperative and calm. The Court finds that Chronister did not observe within the car any item that could pose a threat to his safety or anyone else's safety. The Court finds that while the stop occurred within the boundaries of a larger area where they had been criminal activity, the government did not establish by credible evidence that the specific neighborhood or area where the stop occurred was a high-crime area. The Court finds that Chronister had made a decision upon discovering that Lewis had a criminal record and was on parole that he would search the occupants of the vehicle and the vehicle itself. This intention prompted his call for a backup officer. At the time he requested a backup officer, the Court does not find that he had reasonable suspicion that a crime had been committed other than the traffic violation. At the time of the request for the backup officer, the Court further finds that Chronister did not have a concern for his safety and that there were not objective reasons or facts that would establish a threat to his safety. The Court rejects his testimony on this issue.

Finally, the Court finds that all of the physical and testimonial evidence obtained as a result of Lewis' unlawful extended detention, including any statements or physical evidence, must be suppressed as fruit of an unlawful search and seizure. See <u>Wong Sun v. United States</u>, 371 U.S. 471, 484-85 (1963).

V. **CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion to Suppress [ECF No. 15] is GRANTED.

**DATED:** <u>March 21, 2022</u>.



**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**